**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Frederick and Maxine Jones, | ) | CASE NO. 13-66396-wlh |
| | ) | |
| Debtors. | ) | |

### SECOND AMENDED DEBTORS' CHAPTER 11 PLAN

Frederick and Maxine Jones ("Debtors"), Debtor-in-Possession, through the undersigned counsel, hereby submit to their creditors, as proponents, this Plan of Reorganization (the "Plan") pursuant to Section 1121, et seq., of the United States Bankruptcy Code, 11 U.S.C. (the "Code").

A detailed discussion of the Plan and its implementation is found in the latest filed Disclosure Statement. The Plan should be read in conjunction with the Disclosure Statement. The Debtors urge creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement. In the event of any discrepancy between the Disclosure Statement and Plan, the Plan shall control.

### ARTICLE I—DEFINITIONS

1.1 "Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2 "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3 "Allowed Claim" means a Claim against the Debtor(s) (a) which is listed in the Debtors' Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4 "Assets" means all property, real or personal, in which the Debtor(s) has/have an interest.

1.5 "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1.6 "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7 "Bankruptcy Code" means Title 11 of the United States Code.

1.8 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9 "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10 "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor.

1.11 "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Georgia are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12 "Case" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, and bearing Case No.13-66396.

1.13 "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14 "Claim" means a claim as defined in § 101(5) of the Code.

1.15 "Claimant" means a Person holding a Claim against the Debtors.

1.16 "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17 "Collateral" means any property or interest in property of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18 "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19 "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20 "Confirmation Hearing" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

1.21 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.22 "Creditor" means the holder of a Claim.

1.23 "Days" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24 "Debtors" means Frederick and Maxine Jones.

1.25 "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtors in connection with this Plan, as modified, if applicable.

1.26 "Disputed Claim" means a Claim:

    (a) which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended, or

    (b) which is listed as disputed under any provision of this Plan, or

    (c) as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27 "Effective Date" means the date that is 30 days after the Confirmation Order becomes a Final Order.

1.28 "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.29 "Estate" means the bankruptcy estate(s) of the Debtors. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.30 "Executory Contracts" means all contracts, including unexpired leases, to which the Debtors was/were a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtors.

1.31 "Final Decree" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.32 "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been

timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.33 "Lien" has the meaning set forth in §101(37) of the Code.

1.33A "Material Default" of the Debtors shall occur if (1) Debtors fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 30 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtors and Debtors' attorney a written notice of Debtors' default; and (3) Debtors fails within 30 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.34 "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.35 "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.36 "Petition Date" means July 31, 2013, the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtors.

1.37 "Plan" means this Plan, as it may be amended from time to time.

1.38 "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.39 "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.40 "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.41 "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.42 "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.43 "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.44 "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.45 "Secured Claim" means any Claim, debt, or demand against the Debtor as determined in accordance with § 506(a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.46 "Unexpired Lease" means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.47 "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.48 "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II—CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 **Classes 1-2** (Bank of America Secured Claims): Classes 1-2 consist of the secured prepetition claims of Bank of America ("BOA"). BOA holds secured claims consisting of principal and interest in the approximate total amount of $126,429.15 (such amount plus interest shall be referred to as the "BOA Debt"). The BOA Debt consists of two notes owed to BOA: The 1224 Bonita Note in the principal amount of $67,445.44 is secured by a deed to secure debt on the Debtors' real property located at 1224 Bonita Circle, Jonesboro, Georgia (the "1224 Bonita Property"). The Debtors value the 1224 Bonita Circle Property at $51,000.00. The 6078 Cherokee Valley Note in the principal amount of $58,983.71 is secured by a deed to secure debt on the Debtors' real property located at 6078 Cherokee Valley Lane, Lithonia, Georgia (the 6078 Cherokee Property"). Debtors value the 6078 Cherokee Property at 36,000.00.

2.2. **Class 3-7** (Branch Banking and Trust Company's Secured Claims): Classes 3-7 consist of the secured prepetition claims of Branch Banking and Trust Company ("BB&T"). BB&T holds secured claims consisting of principal and interest in the approximate total amount of $646,498.88 (such amount plus interest shall be referred to as the "BB&T Debt"). The BB&T Debt consists of five notes owed to BB&T: The 1331 Greenridge Trail Note #1 in the principal

amount of $305,649.88 is secured by a deed to secure debt on the Debtors' principal residence located at 1331 Greenridge Trail, Lithonia, Georgia (the "1331 Greenridge Property"). The 1331 Greenridge Trail Note #2 in the principal amount of $98,000.00 is secured by a second priority deed to secure debt on the 1331 Greenridge Property. The 128 7th Avenue Note in the principal amount of $88,600.41 is secured by a deed to secure debt on the Debtors' real property located at 128 N. 7th Avenue, Delray Beach, Florida (the "128 7th Ave. Property"). Debtors value the 128 7th Ave. Property at $77,000.00. The 410 5th Avenue Note in the principal amount of $68,405.15 is secured by a deed to secure debt on the Debtors' real property located at 410 SW 5th Avenue, Delray Beach, Florida (the "410 5th Ave. Property"). Debtors value the 410 5th Ave. Property at $68,405.15. The 3302 Moravia Drive Note in the principal amount of $85,843.82 is secured by a deed to secure debt on the Debtors' real property located at 3302 Moravia Drive, Lithonia, Georgia (the "3302 Moravia Property"). The Debtors value the 3302 Moravia Property at $57,000.00.

2.3   **Class 8** (Chase Mortgage Secured Claim): Class 8 consists of the secured prepetition claim of Chase Mortgage ("Chase"). Chase holds a secured claim consisting of principal and interest in the approximate amount of $29,081.00 (such amount plus interest shall be referred to as the "Chase Debt"). The Chase Debt is secured by a deed to secure debt on the Debtors' real property located at 4701 Flat Shoals Road, Union City, Georgia (the "4701 Flat Shoals Property"). Debtors value the 4701 Flat Shoals Property at $20,000.00.

2.4.   **Class 9-12** (PNC Bank Secured Claims): Classes 9-12 consist of the secured prepetition claims of PNC Bank ("PNC"). PNC holds secured claims consisting of principal and interest in the approximate total amount of $353,286.67 (such amount plus interest shall be referred to as the "PNC Debt"). The PNC Debt consists of four notes owed to PNC: The 4454 Cypress Note in the principal amount of $95,018.95 is secured by a deed to secure debt on the Debtors' real property located at 4454 Cypress Ridge Lane, Stone Mountain, Georgia (the "4454 Cypress Property"). The Debtors value the 4454 Cypress Property at $28,000.00. The 3316 Moravia Note in the principal amount of $84,811.27 is secured by a deed to secure debt on the Debtors' real property located at 3316 Moravia Drive, Lithonia, Georgia (the 3316 Moravia Property"). Debtors value the 3316 Moravia Property at 54,000.00. The 3925 Winterstreet Note in the principal amount of $94,327.97 is secured by a deed to secure debt on the Debtors' real property located at 3925 Winterstreet Drive, Decatur, Georgia (the 3925 Winterstreet Property"). Debtors value the 3925 Winterstreet Property at 79,000.00. The 1601 Sugarplum Note in the principal amount of $79,128.48 is secured by a deed to secure debt on the Debtors' real property located at 1601 Sugarplum Drive, Conyers, Georgia (the 1601 Sugarplum Property"). Debtors value the 1601 Sugarplum Property at 46,000.00.

2.5   **Class 13-19** (Wells Fargo Secured Claims): Classes 13-19 consist of the secured prepetition claims of Wells Fargo Bank ("Wells Fargo"). Wells Fargo holds secured claims consisting of principal and interest in the approximate total amount of $493,559.87 (such amount plus interest shall be referred to as the "Wells Fargo Debt"). The Wells Fargo Debt consists of seven notes

owed to Wells Fargo: The 6828 Timberclair Note in the principal amount of $78,892.46 is secured by a deed to secure debt on the Debtors' real property located at 6828 Timberclair Court, Lithonia, Georgia (the "6828 Timberclair Property"). The Debtors value the 6828 Timberclair Property at $56,000.00. The 4076 Pinehurst Note #1 in the principal amount of $78,925.32 is secured by a deed to secure debt on the Debtors' real property located at 4076 Pinehurst Valley Drive, Decatur, Georgia (the "4076 Pinehurst Property"). Debtors value the 4076 Pinehurst Property at $68,000.00. The 4076 Pinehurst Note #2 in the principal amount of $74,000.00 is secured by a second priority deed to secure debt on the 4076 Pinehurst Property. The 6669 Cameron Note in the principal amount of $72,395.53 is secured by a deed to secure debt on the Debtors' real property located at 6669 Cameron Road, Morrow, Georgia (the "6669 Cameron Property"). Debtors value the 6669 Cameron Property at $51,000.00. The 635 Hunting Creek Note in the principal amount of $44,681 is secured by a deed to secure debt on the Debtors' real property located at 685 Hunting Creek Lane, Conyers, Georgia (the "685 Hunting Creek Property"). Debtors value the 685 Hunting Creek Property at $13,500.00. The 6555 Planters Court Note in the principal amount of $69,541.46 is secured by a deed to secure debt on the Debtors' real property located at 6555 Planters Court, Morrow, Georgia (the "6555 Planters Court Property"). Debtors value the 6555 Planters Court Property at $46,000.00. The 5320 Olde St. Note in the principal amount of $74,594.31 is secured by a deed to secure debt on the Debtors' real property located at 5320 Olde St., Stone Mountain, Georgia (the "5320 Olde St. Property"). Debtors value the 5320 Olde St. Property at $21,000.00.

2.7    **Class 20 (General Unsecured)**: Class 20 consists of the general unsecured creditors.

### ARTICLE III—TREATMENT OF CLAIMS AND INTERESTS

3.1. **Administrative Expenses (Unclassified)**: Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtors, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtors in the ordinary course of business, or otherwise assumed by Debtors on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by Debtors when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtor of its business (or financial affairs in the case of an individual debtor) in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after Debtor provides notice by mail or by publication, in a form and

manner approved by the Court, of the occurrence of the Effective Date. At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtors. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court. Debtors' attorney fees during the remaining pendency of the case shall be paid as the same may be approved by the Bankruptcy Court. The Plan provides that Debtor may pay professional fees incurred after confirmation of the Plan without Court approval. Debtor shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court.

The total unpaid professional fees as of the date of this Plan are estimated to be approximately $15,000.00, partially covered through a $12,894.00 prepetition retainer, although additional fees will be incurred before the Effective Date. The Debtor is unaware of any other unpaid administrative expense claims.

Within this class are all preconfirmation fees payable to the U.S. trustee pursuant to 28 U.S.C. § 1930(a)(6), which shall be paid on the effective date of the Plan, if not paid sooner. After confirmation, and until the case is closed, the Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

3.2. **Priority Taxes (Unclassified):** The Debtor in unaware of any such claims.

3.3 **Class A (Priority (non-tax) Claims):** The Debtor is unaware of any such claims, and no proofs of claim in this class have been filed. In the unlikely event that there are any allowed Claims in Class A, they shall be paid in full, in cash, by the Debtor on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. This class is not impaired.

3.4. **Classes 1-2 (BOA Secured Claims):** Classes 1-2 shall consist of the secured prepetition claims of BOA. BOA shall retain its liens on all the accompanying properties to the same extent, priority, and validity as existed on the Filing Date. The BOA Claims will be satisfied as follows:

3.4.1 **Class 1:** 1224 Bonita Note: BOA shall hold a secured claim of $51,000.00 and a deficiency claim of $16,445.51 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $322.65. BOA shall retain its lien on the 1224 Bonita Property to the same extent, validity, and priority as such

existed on the Filing Date. At any time upon Debtors' payment of the outstanding debt on the 1224 Bonita Property, BOA shall release its lien on the 1224 Bonita Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

3.4.2 **Class 2:** 6078 Cherokee Valley Note: BOA shall hold a secured claim in the amount of $36,000.00 and a deficiency claim of $22,983.71 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $227.75. BOA shall retain its lien on the 6078 Cherokee Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 6078 Cherokee Property, BOA shall release its lien on the 6078 Cherokee Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

Classes 1-2 are impaired and are entitled to vote on the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of the claim. Debtors reserve the right to object to any and all claims.

3.6. **Classes 3-7 (BB&T Secured Claims):** Classes 3-7 shall consist of the secured prepetition claims of BB&T. BB&T shall retain its liens on all the accompanying properties to the same extent, priority, and validity as existed on the Filing Date The BB&T Claims will be satisfied as follows:

3.6.1. **Class 3:** 1331 Greenridge Trail Note: The 1331 Greenridge Tail Note is secured by the Debtors' principal residence; therefore, the claom may not be modified. BB&T's claim shall be paid pursuant to the underlying loan documents.

3.6.2. **Class 4:** 1331 Greenridge Trail Note #2: This note is also secured by the Debtors' principal residence; therefore, the claim may not be modified. BB&T's claim shall be paid pursuant to the underlying loan documents.

3.6.3. **Class 5:** 128 7th Avenue Note: BB&T shall hold a secured claim of $77,000.00 and a deficiency claim of $11,600.41 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.0% principal and interest amortized at 20 years. The monthly payments shall be $466.60. BB&T shall retain its lien on the 128 7th Ave. Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 128 7th Ave. Property, BB&T shall release its lien on the 128 7th Ave. Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

3.6.4. **Class 6:** 410 5th Avenue Note: BB&T shall hold a secured claim for $68,405.15. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.25% principal and interest amortized at 20 years. The monthly payments shall

be $423.59. BB&T shall retain its lien on the 410 5th Ave. Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 410 5th Ave. Property, BB&T shall release its lien on the 410 5th Ave. Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

3.6.5 **Class 7:** 3302 Moravia Note: BB&T shall hold a secured claim for $57,000.00 and a deficiency claim of $30,843.82 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $360.61. BB&T shall retain its lien on the 3302 Moravia Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 3302 Moravia Property, BB&T shall release its lien on the 3302 Moravia Property and take such action as reasonably necessary to evidence such cancellation upon such payment. Adequate protection payments

Classes 5-7 are impaired and are entitled to vote on the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of the claim. Debtors reserve the right to object to any and all claims. Classes 3-4 are not impaired, and thus are not entitled to vote on the Plan.

3.7. **Class 8 (Chase Mortgage):** Class 8 consists of the secured prepetition claim of Chase. Chase shall hold a secured claim for $20,000.00 and a deficiency claim for $9,081.00 to be treated as a Class 20 general unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 15 years. The monthly payments shall be $153.00. Chase shall retain its lien on the 4701 Flat Shoals Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 4701 Flat Shoals Property, Chase shall release its lien on the 4701 Flat Shoals Property and take such action as reasonably necessary to evidence such cancellation upon such payment. Chase shall retain its liens on the accompanying property to the same extent, priority, and validity as existed on the Filing Date

This class is impaired and is entitled to vote on the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of the claim. Debtors reserve the right to object to any and all claims.

3.8. **Class 9-12 (PNC Bank):** Classes 9-12 consists of the secured prepetition claims of PNC Bank. PNC Bank shall retain its liens on all the accompanying properties to the same extent, priority, and validity as existed on the Filing Date. The PNC Claims shall be satisfied as follows:

3.8.1. **Class 9:** 4454 Cypress Note: PNC shall hold a secured claim of $28,000.00 and a deficiency claim of $67,018.95 to be treated as a Class 20 unsecured claim. Commencing on the

Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 15 years. The monthly payments shall be $214.20. PNC shall retain its lien on the 4454 Cypress Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 4454 Cypress Property, PNC shall release its lien on the 4454 Cypress Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

      3.8.2. **Class 10:** 3316 Moravia Note: PNC shall hold a secured claim of $54,000.00 and a deficiency claim of $30,811.27 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $341.63. PNC shall retain its lien on the 3316 Moravia Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 3316 Moravia Property, PNC shall release its lien on the 3316 Moravia Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

      3.8.3. **Class 11:** 3925 Winterstreet Note: PNC shall hold a secured claim of $79,000.00 and a deficiency claim of 15,327.97 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $499.79. PNC shall retain its lien on the 3925 Winterstreet Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 3925 Winterstreet Property, PNC shall release its lien on the 3925 Winterstreet Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

      3.8.4. **Class 12:** 1601 Sugarplum Note: PNC shall hold a secured claim of $46,000.00 and a deficiency claim of $33,128.48 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $291.02. PNC shall retain its lien on the 1601 Sugarplum Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 1601 Sugarplum Property, PNC shall release its lien on the 1601 Sugarplum Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

    Classes 9-12 are impaired and are entitled to vote on the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of the claim. Debtors reserve the right to object to any and all claims.

**3.9. Class 13-19 (Wells Fargo)**: Classes 13-19 shall consist of the secured prepetition claims of Wells Fargo. Wells Fargo shall retain its liens on all the accompanying properties to the same extent, priority, and validity as existed on the Filing Date. The Wells Fargo Claims shall be satisfied as follows:

3.9.1. **Class 13:** 6828 Timberclair Note: Wells Fargo shall hold a secured claim of $56,000.00 and a deficiency claim of $22,892.46 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $354.28. Wells Fargo shall retain its lien on the 6828 Timberclair Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 6828 Timberclair Property, Wells Fargo shall release its lien on the 6828 Timberclair Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

3.9.2. **Class 14:** 4076 Pinehurst Note #1: Wells Fargo shall hold a secured claim of $68,000.00 and a deficiency claim of $10,925.32 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $430.20. Wells Fargo shall retain its lien on the 4076 Pinehurst Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 4076 Pinehurst Property, Wells Fargo shall release its lien on the 4076 Pinehurst Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

3.9.3. **Class 15:** 4076 Pinehurst Note #2: The second priority deed to secure debt on the 4076 Pinehurst Property is unsecured in that no equity exists in the 4076 Pinehurst Property for the lien to attach. As a result, the 4076 Pinehurst Note #2 is unsecured and shall be treated as a Class 20 unsecured claim.

3.9.4. **Class 16:** 6669 Cameron Note: Wells Fargo shall hold a secured claim of $51,000.00 and a deficiency claim of $21,395.53 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $322.65. Wells Fargo shall retain its lien on the 6669 Cameron Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 6669 Cameron Property, Wells Fargo shall release its lien on the 6669 Cameron Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

3.9.5 **Class 17:** 635 Hunting Creek Note: Wells Fargo shall hold a secured claim of $13,500.00 and a deficiency claim of $31,181 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 15 years. The monthly payments shall be $103.27. Wells Fargo shall retain its lien on the 635 Hunting Creek Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 635 Hunting Creek Property, Wells Fargo shall release its

lien on the 635 Hunting Creek Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

3.9.6 **Class 18:** 6555 Planters Note: Wells Fargo shall hold a secured claim of $46,000.00 and a deficiency claim of $22,892.46 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $291.02. Wells Fargo shall retain its lien on the 6555 Planters Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 6555 Planters Property, Wells Fargo shall release its lien on the 6555 Planters Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

3.9.7. **Class 19:** 5320 Olde St. Note: Wells Fargo shall hold a secured claim of $21,000.00 and a deficiency claim of $53,594.31 to be treated as a Class 20 unsecured claim. Commencing on the Effective Date and continuing on the 30th day of each month thereafter, Debtor shall pay 4.5% principal and interest amortized at 20 years. The monthly payments shall be $132.86. Wells Fargo shall retain its lien on the 5320 Olde. St. Property to the same extent, validity, and priority as such existed on the Filing Date. At anytime upon Debtors' payment of the outstanding debt on the 5320 Olde. St. Property, Wells Fargo shall release its lien on the 5320 Olde. St. Property and take such action as reasonably necessary to evidence such cancellation upon such payment.

Classes 13-19 are impaired and are entitled to vote on the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of the claim. Debtors reserve the right to object to any and all claims.

3.10. **Class 20 (General Unsecured Claims)**: Class 20 consists of all general unsecured claims against the Debtors. Holders of Class 20 claims shall be paid, pro rata, a total of $32,749.20, to be paid $3,274.92 six months following the Effective Date and $3,274.92 semi-annually for the remaining time period that will end on the 60 month anniversary of the Effective Date to total twenty payments. Payments on Class 20 claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor. This class is impaired and entitled to vote.

## ARTICLE IV—EXECUTION OF PLAN

The Debtor shall fund this Plan with income from the Debtor's post-petition employment income. The Debtor shall retain the Assets of the estate and shall pay ordinary living expenses and pay the creditors the amounts set forth in the Plan from the proceeds thereof. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves

the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

## ARTICLE V—RETENTION OF JURISDICTION

5.1     Retention of Jurisdiction. Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

      5.1.1    To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

      5.1.2    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

      5.1.3    To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

      5.1.4    To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

      5.1.5    To hear and rule upon all applications for Professional Compensation;

      5.1.6    To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

      5.1.7    To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

      5.1.8    To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

      5.1.9    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

      5.1.10   To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

      5.1.11   To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

      5.1.12   To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

      5.1.13   To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

      5.1.14   To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of their assets during the Bankruptcy Case; and

      5.1.15   To enter a final decree.

5.2      <u>Alternative Jurisdiction</u>. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

5.3      <u>Final Decree</u>: The Bankruptcy Court may, upon application of the Debtors, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) the Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtor has brought or bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause. Debtor shall be authorized to reopen the Bankruptcy Case for purposes of obtaining a discharge after entry of the final decree and the fee associated with the attendant motion to reopen Debtors' case shall be waived, and Debtors shall not be responsible for payment of such to the Clerk of Court for the Bankruptcy Court of the Northern District of Georgia.

### **ARTICLE VI—EXECUTORY CONTRACTS AND LEASES**

6.1      All prepetition leases with tenants inhabiting any of the real properties listed in Schedule A of the Debtors' bankruptcy schedules shall be assumed. Any prepetition Executory Contracts and Leases in effect as of the Effective Date (other than any leases to tenants of the Debtors' real properties listed in Schedule A) and not specifically rejected will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on

or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, its Estate, Assets, or properties. All Rejection Claims shall be General Unsecured Claims.

## ARTICLE VII—MODIFICATION OF PLAN

7.1     The Debtors may submit modifications to the Plan at any time before Confirmation pursuant to § 1127(a) of the Code, and thereafter in accordance with § 1127(b) or (e). After confirmation, the plan may be modified pursuant to § 1127(e).

## ARTICLE VIII—DISCHARGE AND CLOSING

8.1     Discharge: Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, Debtor or his Estate that arose prior to the Effective Date. However, pursuant to section 1141(d)(5) of the Bankruptcy Code, except in limited circumstances, a discharge is not available to an individual debtor unless and until all payments have been made under the plan. Therefore, Debtor does not have a right to a discharge until all the plan payments have been made unless otherwise ordered by the Court pursuant to section 1141(d)(5) of the Bankruptcy Code. Debtor is not waiving his right to seek entry of a discharge order before completion of all plan payments. In the event Debtor seeks entry of a discharge order after the entry of a final decree, Debtor may reopen the Case for purposes of obtaining a discharge. Additionally, the Plan shall not be construed as attempting to discharge any debt that is excepted from discharge pursuant to Bankruptcy Code sections 1141(d)(2) and 523(a)(1).

## ARTICLE IX—MISCELLANEOUS

9.1     Injunction: Upon entry of a Confirmation Order in this case, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim provided for under this Plan against Debtor or Reorganized Debtor or against any property of Debtor or Reorganized Debtors or any property otherwise pledged as collateral against such Claim provided for under this Plan, except as provided for in this Plan.

9.2     Vesting of Debtors' Assets: Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtors free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the

Effective Date, Debtors may use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

9.3     Binding Effect: Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law.

9.4     Severability: Should any provision of the Plan be determined to be unenforceable after the Effective Date such determination shall in no way limit or effect the enforceability and operative effect of any and all of the other provisions of the Plan.

9.5     Revocation: The Debtor reserves the right to revoke, and withdraw the Plan prior to Confirmation. If the Debtor revokes and/or withdraw the Plan, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, or any other person or entity or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

9.6     Liabilities: Debtor will not have any liabilities except those expressly assumed under the Plan. Debtor will be responsible for all ongoing expenses and payments due and owing under the confirmed Plan.

9.7     Wells Fargo Default - Class 14: This default provision shall only apply to Class 14 of the Plan. Should the Debtor default in payment of any sum specified herein while this case is pending, then upon written notice of default sent by first class mail to Debtor and Debtor's attorney, and failure of the Debtor to cure said default within ten (10) days from the date of receipt of said notice, Creditor, Wells Fargo Bank, N.A., may file a motion and affidavit with the Court, with service upon Debtor and Debtor's attorney, and the Court may enter an Order modifying the automatic stay without further notice or hearing.  Should the Debtor default in payment of any sum specified herein after this case is administratively closed, then upon written notice of default sent by first class mail to Debtor and Debtor's attorney, and failure of the Debtor to cure said default within ten (30) days from the date of receipt of said notice, Creditor, Wells Fargo Bank, N.A., may proceed with the exercise of its private power of sale and to foreclose under its Loan Documents and appropriate state statutes, without further notice or hearing.

If the case is dismissed, converted to another chapter, or relief from the automatic stay is granted, then the cramdown shall be void and the loan terms shall revert to the original terms.

If the Debtor transfers the subject property, refinances the loan on the subject property, or sells the subject property, prior to the substantial consummation of the Plan, then the cramdown shall

be void and the loan terms shall revert to the original terms and the Debtor shall pay the entire balance due on the mortgage in full at closing.

9.8     Plan Controls: In the event, and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement or instrument required or contemplated to be executed by the Debtor or any other entity pursuant to the Plan, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between any provision of any of the foregoing documents and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

Respectfully submitted this 2nd day of December, 2013

>Frederick Jones and Maxine Jones
>/s/ Frederick Jones
>
>/s/ Maxine Jones
>Debtors and Debtors-in-Possession
>
>**Law Office of Will B. Geer, LLC**
>
>/s/ *Will B. Geer*
>Will B. Geer
>Georgia Bar No. 940493
>Attorney for Debtor
>17 Executive Park Drive, NE
>Suite 115,
>Atlanta, Georgia 30329
>(678) 587-8740
>(404) 287-2767 Facsimile
>Email: willgeer@willgeerlaw.com